149 N.J. Super. 461 (1977)
374 A.2d 49
IRVINGTON GENERAL HOSPITAL, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
DEPARTMENT OF HEALTH OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT. IRVINGTON GENERAL HOSPITAL, A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
BRENDAN T. BYRNE, GOVERNOR OF THE STATE OF NEW JERSEY, JOANNE E. FINLEY, M.D., STATE COMMISSIONER OF HEALTH, STATE DEPARTMENT OF HEALTH, HEALTH CARE ADMINISTRATION BOARD, WILLIAM F. HYLAND, ATTORNEY GENERAL OF THE STATE OF NEW JERSEY, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 19, 1977.
Decided May 2, 1977.
*464 Before Judges MATTHEWS, SEIDMAN and HORN.
Mr. Edward G. D'Alessandro argued the cause for appellant (Messrs. Friedman & D'Alessandro, attorneys; Mr. D'Alessandro and Mr. Paul J. Hirsh on the brief).
Mr. Douglass L. Derry, Deputy Attorney General, argued the cause for respondents (Mr. William F. Hyland, Attorney General, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel; Mr. Douglass L. Derry, Deputy Attorney General, on the brief).
PER CURIAM.
The first of these consolidated appeals is from the denial of a certificate of need by the Health Care Administration Board in the Department of Health. The second is from the dismissal of a proceeding in lieu of prerogative writs instituted by Irvington General Hospital against the Governor, the Commissioner of Health, the Attorney General, the Department of Health and the Health Care Administration Board.
Irvington General Hospital submitted an application for a certificate of need in November 1973. It sought permission to construct an addition to the hospital and to add two medical/surgical beds, six intensive care/cardiac care unit beds, and 17 beds which it classified as "intermediate care" beds. Although "intermediate care" beds are used to provide a higher level of care than other medical/surgical beds, it is undisputed that within the classifications set by the Department of Health, such beds are considered medical/surgical. Hence the certificate of need application in effect sought an increase of 19 medical/surgical beds.
After several delays attributable both to the Department and the applicant, hearings were held in September and October 1975. The hearing officer recommended that the application be approved, thereby disagreeing with the prior recommendation of the Commissioner that it be denied.
*465 Between the time of the hearing and the time when the Health Care Administration Board considered the hearing officer's recommendation, the Board reclassified 150 long-term care beds at Clara Maas Hospital as medical/surgical beds, thereby creating an excess of medical/surgical beds in Essex County, the county in which Irvington General Hospital is located. Accordingly, on May 6, 1976 the Board remanded this application to the hearing officer, instructing him to make additional findings of fact "particularly pertinent to the current effect of the reclassification of the beds in the area."
The remand hearing was held, and thereafter the hearing officer recommended that the application be denied solely on the ground that the Department of Health statistics now showed an excess of medical/surgical beds in the county so that there was no need for the 19 beds sought by the applicant.
The second appeal, as noted, is from the denial of relief sought by Irvington General by means of a complaint in lieu of prerogative writs. By the time of the hearing on that complaint the application for a certificate of need had been denied. The trial judge therefore ruled that at least some of the relief sought in that complaint was moot: demand for an order compelling the board to render its decision, for the Attorney General to remove from the case his Deputy who was in charge of the proceedings, and an order that the Attorney General desist from any further dilatory tactics. Plaintiff also sought as additional relief the removal, either by the court or the Governor, of the Commissioner of Health and of all members of the Health Care Administration Board. The hospital also demanded punitive damages from the Commissioner and the members of the Board.
We consider first the appeal from the denial of the certificate of need. We agree with plaintiff's contention that the Board erred in giving conclusive weight to the Department of Health statistics which showed an excess of *466 medical/surgical beds in Essex County at the time of the remand hearing. Undoubtedly, the hearing officer was permitted to consider the latest statistics on bed need at the time of the remand hearing. Merry Heart Nurs. & Conv. Home v. Dougherty, 131 N.J. Super. 412, 418-419 (App. Div. 1974). But that did not mean that he and the Board could permit those figures to be the sole determinative factor.
N.J.S.A. 26:2H-1 provides that it is the public policy of this State that hospital services "of the highest quality, of demonstrated need, efficiently provided and properly utilized at a reasonable cost are of vital concern to the public health." The Department of Health has a mandate to provide central comprehensive planning in the development and administration of health care services throughout the State. N.J.S.A. 26:2H-1.
No new health care service may be instituted unless a certificate of need has first been issued by the Department. N.J.S.A. 26:2H-7. No such certificate may be issued unless the applicant proves that the action proposed "is necessary to provide required health care in the area to be served, can be economically accomplished and maintained, and will contribute to the orderly development of adequate and effective health care services." N.J.S.A. 26:2H-8.
There is no question here that the additional beds can be economically provided and maintained. Moreover, nothing in the record suggests that the certificate of need was denied on the ground that the additional beds would not contribute to the orderly development of adequate and effective health care services. Instead it was determined that, because of the excess medical/surgical beds in Essex County, the 19 beds proposed for Irvington General were not "necessary to provide required health care in the area to be served."
In determining whether each of the three criteria for a certificate of need has been met, the Legislature has required the Health Care Administration Board to take into account several factors:
*467 * * * (a) the availability of facilities or services which may serve as alternatives or substitutes, (b) the need for special equipment and services in the area, (c) the possible economies and improvement in services to be anticipated from the operation of joint central services, (d) the adequacy of financial resources and sources of present and future revenues, (e) the availability of sufficient manpower in the several professional disciplines, and (f) such other factors as may be established by regulation. [N.J.S.A. 26:2H-8]
It is clear, therefore, that in light of those established considerations and the general policy of providing the highest quality health care, it is not sufficient for the Board to consider only the number of beds available in the area, particularly where the area designated by the Department as the "area to be served" may not, in fact, coincide with the area for which the services will, in fact, be provided. Total reliance upon bed statistics would permit the Board to make its decision solely on the basis of the first factor noted in N.J.S.A. 26:2H-8: "the availability of facilities or services which may serve as alternatives or substitutes." It would permit the Board to ignore the remaining factors, notably, in this case, the second one: "the need for special * * * services in the area."
The extensive record compels the conclusion that Irvington General Hospital primarily serves the population of the Town of Irvington. That town has the largest density of citizens over 65 of any municipality in this State. Testimony of various experts establishes that the elderly patients who make up the largest portion of the Hospital's population have a greater need than other patients for the support of relatives and friends during their illnesses, and that the knowledge that they and their families are secure is a significant factor in their successful medical treatment.
The testimony also shows that public transportation to other hospitals in Essex County is poor and that many elderly patients are at least reluctant to go to those hospitals because they are located in high crime areas. Moreover, their elderly spouses and friends are unable to visit them at other *468 locations because of the lack of transportation and threats to their safety.
We also note that the Department's own witnesses, one of whom had prepared the State Plan containing the bed need statistics, acknowledged that those statistics should not be used as the sole determinative factor in deciding whether to grant a certificate of need. We agree. While we recognize the Commissioner's authority to designate areas for health care planning and her mandate to cause appropriate surveys and studies to be made and keep current statistics thereon (N.J.S.A. 26:2H-8 and 2H-9), nevertheless we believe that the Board, in deciding whether to grant a certificate of need, may not, as it did here, rely solely on bed need statistics. Unquestionably, it must also take into account all of the factors set out in N.J.S.A. 26:2H-8 and must, if appropriate, recognize and accept a need for special services in any local area smaller than the larger health care area established by the Department.
Because the Board failed to make those considerations a remand is required. On remand we direct that the Board take into account an additional factor: At the time of the original hearing the Department statistics showed that Essex County needed 73 more medical/surgical beds. By the time of the remand hearing 150 beds at Clara Maas Hospital had been reclassified to medical/surgical. That fact created an excess of beds in the county. The reclassification had been made upon application by Clara Maas suggested by the Department. We cannot tell from the record when the Clara Maas application was made. If, in fact, it was made after the application by Irvington General, we direct that the Irvington General application be considered first, since it was submitted first. In other words, on remand the Irvington General application should be considered as if the Clara Maas application had not yet been determined. See Cooper River Conv. Center v. Dougherty, 133 N.J. Super. 226, 234 (App. Div. 1975).
*469 Finally, we note that the original application by Irvington General included a request not only for 19 medical/surgical beds but also for six intensive care/cardiac care unit beds. There is no evidence whatever in the record to show an excess of such beds even if all of Essex County is considered. The application for those beds was denied apparently because of an excess of medical/surgical beds. On remand that portion of the application should be considered separately and the grant or denial of that portion of the application should not be made to depend upon need for the medical/surgical beds.
We affirm the dismissal of plaintiff's action in lieu of prerogative writs, although we do not agree with the trial judge's reasons for the dismissal. R. 2:2-3(a) (2) provides that all appeals to review final decisions or action of any state administrative agency shall be brought in the Appellate Division. But the action to remove these officials and to obtain damages from them was not one to review the action of an administrative agency. Although closely related to the denial of the certificate of need, it did not seek review of that decision as such. Therefore, it was appropriately instituted in the Law Division. R. 4:69-1.
Since, however, the relief demanded could not, as a matter of law, have been granted, the action was properly dismissed. The judiciary clearly has no authority to direct the Governor to remove the Commissioner and members of the Health Care Administration Board whom he has appointed, and has no jurisdiction to remove them directly. N.J. Const. (1947), Art. V, § IV, par. 2; Art. V, § IV, par. 5; Art. III, par. 1; Grzankowski v. Heymann, 128 N.J. Super. 563, 565-567 (App. Div. 1974); State v. Governor, 25 N.J.L. 331, 349 (Sup. Ct. 1856); Passaic County Bar Ass'n v. Hughes, 108 N.J. Super. 161, 174-175 (Ch. Div. 1969).
Moreover the trial judge could not have granted relief in the form of punitive damages. The Commissioner and members of the Board were immune from suit since all of the actions alleged as the basis for the complaint *470 were discretionary and constituted administrative action or inaction of a judicial nature. N.J.S.A. 59:2-3(a) and (b); N.J.S.A. 59:3-2(a) and (b).
The denial of relief in the action in lieu of prerogative writs is affirmed. The denial of the certificate of need is reversed and the matter is remanded for reconsideration consistent with this opinion. We do not retain jurisdiction.